## ALFRED RICHARDSON *et al. versus* JOHN HOOPER.

The plaintiff, being the owner of a vessel bound on a voyage from Boston to South America, thence to Calcutta, and back to Boston, wrote in his instructions to the defendant, the supercargo, "I am willing to submit the direction of the vessel to you until you have disposed of your outward cargo, and procured a freight, if any can be had, either for Calcutta or Manilla. For all your services for me while absent I agree to pay you a commission of 2 1-2 per cent. on sales in South America and 2 1-2 per cent. on purchases in Calcutta." The defendant having obtained a freight from Monte Video to Valparaiso, it was *held* that this service was not contemplated in the written agreement, and that the defendant might therefore prove by parol evidence, that immediately after the written agreement was made, the parties entered into another agreement by which the defendant, in case he should obtain such freight, was to have a compensation therefor, independently of the commissions mentioned in the written agreement.

ASSUMPSIT for money alleged to have been received by the defendant to the plaintiffs' use, being freight, passage money and other earnings of the brig Smyrna.

At the trial, before *Shaw* C. J., it appeared that the plaintiffs were the owners of the brig; and that the defendant was her supercargo on a voyage from Boston to Buenos Ayres, thence to Valparaiso, Lima, the Sandwich Islands, Calcutta, and back to Boston.

It was conceded that the defendant received the money, for freight and passages, as supercargo, in the course of the voyage; but it was contended that he had a right to retain one half of the same, as supercargo, under an agreement with the plaintiffs. The principal item in controversy was money received for freight of goods carried from Monte Video to Valparaiso.

It further appeared, that one Reed entered into an agreement with the plaintiffs for the freight of a cargo to South America, and for other purposes. In a letter of instructions from Reed to the defendant, to which is subjoined a certificate of Richardson, that it contains a correct statement of the agreement between Reed and Richardson, Reed says, that he has given Richardson a draft on the defendant for 6600 dollars, payable in Calcutta, being the amount agreed upon for the freight on all the merchandise sent in the brig to South America, excepting the goods shipped by Richardson; that his agreement with Richardson is, that for the disposal of the

outward cargo in South America, the defendant is not at liberty to proceed with the brig to more than three ports, say Monte Video, Valparaiso and Lima, &c. ; that if the defendant should find that an investment in any merchandise at either of these ports promises a freight to Calcutta, he may make such investment and ship the merchandise on board the brig, paying half the net profits of the sales on the same at Calcutta in lieu of freight, or if he can get any freight for the brig, of specie or goods, to Calcutta, he may take it and credit the owners of the brig with one half, and keep the other half himself for his agency in getting it ; that at Calcutta he is to invest 35,000 dollars in certain goods, and in lieu of freight on this investment to Boston the owners of the brig are to have one half the net profits here, after charging interest and insurance from Calcutta, the defendant's commission of $2\frac{1}{2}$ per cent. on the investment, wharfage, labor, storage, impost, and Reed's commission of $2\frac{1}{2}$ per cent. on the sales, as expenses here ; that in regard to all other goods which he may ship on board the brig at Calcutta for Boston, he will fill his bills of lading with the freight as directed in his instructions from Richardson ; and that he is at liberty to take seventy-five days, at the ports in South America at which he shall stop, for the sale of the cargo, and for every additional day during which he may detain the brig he is to pay 30 dollars demurrage.

Richardson also addressed a letter of instructions to the defendant, upon which the defendant wrote an acknowledgment that he had received a copy, and a promise to be governed by the instructions. In this letter Richardson says, " I am willing to submit the direction of the Smyrna to you until you have disposed of your outward cargo and procured a freight, if any can be had, either for Calcutta or Manilla."— " For all your services for me while absent, I agree to pay you a commission of $2\frac{1}{2}$ per cent. on sales in South America and $2\frac{1}{2}$ per cent. on purchases in Calcutta."

The defendant contended, that the written agreement contained no stipulation in regard to his claim to the money received for freight on the goods carried from Monte Video to Valparaiso ; and parol evidence was offered, to show a

distinct subsequent agreement for his compensation for that service ; which was objected to.

It was agreed that this evidence should be received *de bene esse*, subject to the opinion of the whole Court. Whereupon Reed testified, that he took up the hold of the brig, and made the agreement with Richardson ; that on the day that the vessel sailed from Boston, the parties were together at his counting-room, and the contracts and instructions were then signed ; that afterwards they all went down to the wharf together, and the vessel was then getting under weigh ; that the defendant expressed a doubt about the expediency of stopping at Monte Video, (it having been left at his discretion to stop or not at a port on the eastern side of South America ;) that he said, if he should stop at that port, if there were any freight or passengers there going round Cape Horn, he was so well acquainted with Noble (a principal merchant there) that he could have them ; that he seemed to think that he ought to have half of the passage money, as well as half of the freight, if any should be obtained there ; that Richardson said he should, or would, have half the freight, and as to the passage money, when he got home they should not differ about it, if he made good despatch ; that he (the witness) did not know whether the words of Richardson, implying that if the defendant got freight in South America he was to have half of it, were used as intending to make a new contract, or as referring to the one already made ; that he (the witness) understood, that by the written contract the defendant was to have half the freight ; and that the discussion arose about the passage money.

A default was entered by consent ; but if under the circumstances the alleged subsequent agreement might be proved by parol evidence, or if by the terms of the written agreement the defendant was entitled to claim the freight in question, the default was to be taken off and a new trial granted.

C. P. *Curtis*, for the defendant, referred to 3 Stark. Ev. 1002, note *s*, 1048, 1049 ; *Le Fevre* v. *Le Fevre*, 4 Serg. & Rawle, 241 ; *Erwin* v. *Saunders*, 1 Cowen, 249 ; *Munroe* v. *Perkins*, 9 Pick. 298, and authorities there cited.

C. G. *Loring*, for the plaintiffs, cited *Stackpole* v. *Arnold*,

11 Mass. R. 30 ; *Munroe* v. *Perkins*, 9 Pick. 305 ; *Leslie*
v. *De la Torre*, cited in 12 East, 583 ; *Parteriche* v. *Powlet*,
2 Atk. 383 ; 3 Stark. Ev. 1007, and note, and 1008 ; *Price*
v. *Dyer*, 17 Ves. 364 ; *Cuff* v. *Penn*, 1 Maule & Selw. 21 ;
*Milton* v. *Edgworth*, 5 Bro. Parl. Cas. (2d edit.) 313 ;
*Thresh* v. *Rake*, 1 Esp. R. 53 ; *Keating* v. *Price*, 1 Johns.
Cas. 22 ; *Jeffery* v. *Walton*, 1 Stark. R. 267.

Richardson<br>*v.*<br>Hooper.

WILDE J. delivered the opinion of the Court.   The
plaintiffs, at the trial, objected to the admission of the parol
evidence offered by the defendant, but it was afterwards taken
by consent, *de bene esse*, subject to the opinion of the
Court.   The question now is, whether this evidence is ad-
missible, and sufficient to warrant a jury in finding the parol
agreement under which the defendant claims the right to re-
tain one half of the freight of goods from Monte Video to
Valparaiso.

*March 11th*

The objection is, that this parol evidence goes to contra-
dict or alter the written agreement contained in the plaintiff's
letter of instructions to the defendant, and by him assented
to in writing.   But we are of opinion that the evidence steers
clear of this objection, and goes to prove a distinct agree-
ment, made after the letter of instructions had been assented
to by the defendant, and depending on a contingency not
within the contemplation of the parties when the written
agreement was completed.   Reed testifies that the writings
were completed and signed at his counting-room, after which
all went down to the wharf together, and while the vessel
was getting under weigh, the parol agreement was there made.

Then it is objected, that if this was a new agreement,
there is no consideration to support it, as by the written
agreement the defendant was to have $2\frac{1}{2}$ per cent. on the
sales and purchases in full compensation for all his services
while absent ; but this compensation is to be understood as
extending only to such services as were within the contem-
plation of the parties at the time when the agreement was
made.

The defendant was then doubtful whether he should go
into Monte Video or not ; he rather thought he should not ;
but in the conversation at the wharf he suggested to the

38 *

Richardson
*v*
Hooper.

plaintiff that he was well acquainted with one Noble (a prin cipal merchant there) and that if he stopped there he could probably procure freight or passengers, if there were any going round Cape Horn. It may be fairly inferred, that it was by this suggestion the plaintiff was induced to offer to allow the defendant a share of the freight if procured, and that this was to be for additional services not referred to in settling the amount of compensation by the written agreement. Reed testifies that he supposed the defendant was entitled to half of the freight by the written contract ; but as to this he is manifestly in an error.

On the whole, therefore, we think that the parol evidence is admissible, and that the testimony of Reed is sufficient, if believed, to support the defendant's claim for a share, as it shows a new contract in that respect, distinct from the written agreement, and a sufficient consideration.

*New trial granted*